UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Hozie Rowell,

            Plaintiff,

—v—

City of New York et al.,

            Defendants.

16-cv-6598 (AJN)

MEMORANDUM
OPINION AND ORDER

ALISON J. NATHAN, District Judge:

In this civil rights action, Plaintiff Hozie Rowell brings claims under 28 U.S.C. § 1982 and state law in connection with his arrest and prosecution for possession of drugs and drug paraphernalia. Defendants have moved for summary judgment and, for reasons explained below, that motion is granted as to all claims except the Plaintiff's claim for the denial of the right to a fair trial and his claim for failure to intervene.

I.    **Background**

In early 2014, a confidential informant ("CI") informed Defendant Detective Shane Killilea that the Plaintiff was selling cocaine and crack cocaine out of his apartment. P. 56.1, Dkt. No. 69, ¶ 15; D. 56.1, Dkt. No. 62, ¶ 1. The CI said that he knew Plaintiff "from the neighborhood." P. 56.1 ¶ 16; D. Reply 56.1, Dkt. No. 72, ¶ 16. Killilea then ran a background check on the Plaintiff, which revealed the Plaintiff's arrest history of approximately 70 arrests, most of which occurred during the 1980s. P. 56.1 ¶¶ 15, 17; D. Reply 56.1 ¶¶ 15, 17. Killilea had never heard of the Plaintiff prior to receiving information from the CI. D. 56.1 ¶ 2.

Killilea had worked with the CI since 2012. P. 56.1 ¶ 18; D. Reply 56.1 ¶ 18. Prior to working with the police, the CI had been convicted for selling narcotics. P. 56.1 ¶ 19; D. Reply

1

56.1 ¶ 19. At the time of Killilea's deposition, he recalled that the CI had been convicted of shoplifting at some point but did not recall whether the CI had been convicted of any other crimes. P. 56.1 ¶ 18; D. Reply 56.1 ¶ 18. Prior to providing information about the Plaintiff, the CI had provided reliable information which resulted in two positive search warrant executions in March 2013 and August 2013. D. 56.1 ¶ 3.

Between March 2014 and May 2014, Killilea had the CI conduct six "controlled buys," in which the CI went with the Plaintiff into his apartment building to exchange money for drugs. D. 56.1 ¶¶ 4-15; P. 56.1 ¶¶ 21-25; D. Reply 56.1 ¶¶ 21-25. After each controlled buy, the CI described to Killilea what the Plaintiff was wearing and brought back a substance that was field tested positive as either cocaine or crack cocaine. D. 56.1 ¶¶ 4-15. Killilea created several required forms after each controlled buy, although many do not include details such as where the controlled buys took place or how asset validation occurred. P. 56.1 ¶¶ 23-29; D. Reply 56.1 ¶¶ 23-29. Neither Killilea nor Defendant Joan Ferreira could recall anything about any of the six controlled buys at their depositions. P. 56.1 ¶ 21; D. Reply 56.1 ¶ 21. In May 2014, the CI also identified the Plaintiff in a photo array as the individual who sold drugs to him during the six controlled buys. D. 56.1 ¶ 16. Killilea testified at his deposition that he never had any impression that the CI had any vendetta or ill will towards the Plaintiff or that the CI was being untruthful. D. 56.1 ¶ 17.

Based on the CI's information, the results of the controlled buys, and the CI's identification of the Plaintiff in a photo array, Assistant District Attorney Daniel J. Haier drafted and approved an affidavit submitted in connection with an application for a warrant to search the Plaintiff's apartment and person. D. 56.1 ¶¶ 18-19. Judge Richard M. Weinberg of the Criminal Court of the City of New York issued a search warrant for the Plaintiff's apartment and person

on May 30, 2014, concluding that there was reasonable cause for believing that cocaine may be found in the Plaintiff's apartment. D. 56.1 ¶ 20; P. 56.1 ¶ 36; D. Reply 56.1 ¶ 36. The warrant included authorization – in accordance with the specific request made in the search warrant – to videotape and photograph the interior of the Plaintiff's apartment. P. 56.1 ¶ 36; D. Reply 56.1 ¶ 36. Police Officer Acevedo was specifically designated to be the "recorder-W/O" and take notes and record where contraband evidence was found and take photographs of such evidence with a precinct-issued camera. P. 56.1 ¶¶ 38-40; D. Reply 56.1 ¶¶ 38-40.

On June 5, 2014 at approximately 6 a.m., officers entered the Plaintiff's apartment, handcuffed the four individuals inside (the Plaintiff, his wife, and his two granddaughters), and began searching the apartment. P. 56.1 ¶¶ 41-59; D. Reply 56.1 ¶¶ 41-59. While the parties dispute the exact timing of events, at some point, Killilea and Police Officer Popovic searched the Plaintiff's bedroom and allegedly found cocaine, as well as small plastic baggies that may be used for selling narcotics. D. 56.1 ¶ 24; P. 56.1 ¶ 46; D. Reply 56.1 ¶ 46. The drugs and baggies were vouchered and preserved and lab tested positive for cocaine. D. 56.1 ¶¶ 25-26. No photographs were taken of the evidence while it was in the apartment, nor were any photos taken of the location in which the drugs were found. P. 56.1 ¶¶ 57-58; D. Reply 56.1 ¶¶ 57-58. At some point during the search, Killilea left the apartment, drove away in an unmarked black car, and returned approximately 20 minutes later. P. 56.1 ¶ 49.

Plaintiff was arrested and charged with Criminally Using Drug Paraphernalia in the Second Degree and Criminal Possession of a Controlled Substance in the Seventh Degree. D. 56.1 ¶ 28. He was taken to the police precinct, where Defendant Ferreira told the Plaintiff not to worry because the officers had only found empty plastic bags in his apartment. P. 56.1 ¶ 60; D.

Reply 56.1 ¶ 60. The prosecution against the Plaintiff was ultimately dismissed on speedy trial grounds on January 21, 2016. D. 56.1 ¶ 32.

On August 22, 2016, the Plaintiff initiated the present action in the Southern District of New York by filing a complaint against Defendants City of New York, Ferreira, Killilea, and several John Doe officers. Dkt. No. 1. He filed his Third Amended Complaint on January 4, 2017. Third Amended Complaint ("TAC"), Dkt. No. 21. Following discovery, the Defendants moved for summary judgment. Dkt. No. 60. The Court now resolves that motion.

## II. Legal Standard

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Summary judgment is appropriate when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). The court must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007). Moreover, "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant "demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting *Celotex Corp.*, 477 U.S. at 323).

## III. Discussion

The Plaintiff's Third Amended Complaint includes claims brought pursuant to § 1983 for illegal search, false arrest, malicious prosecution, First Amendment retaliation, excessive force, denial of the right to a fair trial, failure to intervene, and municipal liability. TAC ¶¶ 109-42. It also brings state law claims against the individual and municipal Defendants. TAC ¶¶ 143-68. For the reasons that follow, summary judgment is granted on all of the Plaintiff's claims except his claim for denial of the right to a fair trial and his claim for failure to intervene.[1]

---

[1] The Defendant states that the Plaintiff has withdrawn his § 1983 claims for First Amendment Retaliation and excessive force, as well as his state-law claims for false imprisonment, unreasonable search and seizure, larceny, and trespass to chattels. D. Support, Dkt. No. 63, at 1 n.1; Oct. 16, 2017 Email, Dkt. No. 61-22; Dec. 11, 2017 Email, Dkt. No. 61-23. The Plaintiff does not dispute that he has withdrawn these claims.

A.  **Because a Genuine Issue of Material Fact Exists Whether the Defendant Officers Fabricated Evidence, Summary Judgment Is Denied on the Plaintiff's Fair Trial Claim**

In his seventh federal claim, the Plaintiff alleges that the individual Defendants violated his right to a fair trial by "fabricat[ing] allegations likely to influence a jury's decision and forward[ing] that information to the Manhattan District Attorney's Office." TAC ¶ 134. The Plaintiff has raised a triable issue on this claim, and summary judgment with respect to it is thus denied.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 275 (2d Cir. 2016) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). To succeed on a claim for the denial of a right to a fair trial, a plaintiff must demonstrate that "an (1) investigating official (2) fabricate[d] evidence (3) that [wa]s likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012). "Probable cause is not a defense." *Id.* (citing *Ricciuti*, 124 F.3d at 129). A trial is not a prerequisite to a claim: a plaintiff need only prove that he suffered a "deprivation of liberty [that] is not 'too remote a consequence' of the act of creating the false information." *Dowling v. City of New York*, No. 11-cv-4954 (NGG) (RML), 2013 WL 5502867, at *6 (E.D.N.Y. Sept. 30, 2013) (quoting *Powers v. Coe*, 728 F.2d 97, 105-06 (2d Cir. 1984)).

Defendants argue that they are entitled to summary judgment on this claim because "plaintiff is unable to establish that defendants fabricated any evidence." D. Support at 16. But the Plaintiff has put forth sufficient evidence from which a reasonable juror could conclude that

6

one or more of the individual Defendants fabricated evidence that drugs were found in the Plaintiff's apartment on June 5, 2014. First, the Plaintiff has provided testimony of himself, his wife, and his two granddaughters denying the existence of any cocaine in the apartment. P. 56.1 ¶¶ 5-6 (collecting relevant citations from each family member's deposition). Second, no other tin foil or glassine bottles like the ones the cocaine was contained in were found in the apartment, nor were other objects associated with the sale of drugs – such as scales or weighing devices, money, documents or records relating to drug transactions, weapons, vials, or surveillance equipment – found in the apartment. P. 56.1 ¶ 56; D. Reply 56.1 ¶ 56. Third, the officers took no photographs of the drugs in the Plaintiff's apartment despite specifically requesting the ability to take photographs and designating Officer Acevedo for the purposes of documenting (in notes and photographs) any contraband found in the apartment. P. 56.1 ¶¶ 36, 38-40, 57-58; D. Reply 56.1 ¶¶ 36, 38-40, 57-58. Fourth, several members of the Plaintiff's family who were present during the search testified that Defendant Killilea left the apartment in an unmarked car and returned after 15 or 20 minutes. P. 56.1 ¶ 49. Fifth, no police officer completed the document known as the Receipt for Property Taken Under Search Warrant after the search of the Plaintiff's apartment despite NYPD rules requiring preparation of that document and giving a copy to the occupants of the searched location and keeping a copy at the precinct. P. 56.1 ¶¶ 59, 80; D. Reply 56.1 ¶¶ 59, 79. Sixth, the Plaintiff and his wife testified in their depositions that Defendant Ferreira, seemingly unaware of the cocaine allegedly found in the Plaintiff's apartment, told the Plaintiff at the precinct that the officers had only found empty bags at his apartment. P. 56.1 ¶ 60; D. Reply 56.1 ¶ 60. A reasonable juror could credit all of the above information and decide that one or more of the Defendant officers fabricated evidence that cocaine had been found at the Plaintiff's apartment.

Moreover, the Defendant officers are not entitled to qualified immunity on the Plaintiff's fair trial claim. "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]' . . . The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014) (first, second, third, and fourth alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate" such that "every 'reasonable official would have understood that what he is doing violates that right.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

It was clearly established in 2014 that police officers violated the fair trial right of individuals against whom they fabricated evidence. In *Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015), the Second Circuit held that officers were not entitled to qualified immunity for knowingly falsifying evidence in 2007 because, based on a long line of Second Circuit precedent, even in 2007, "it was not 'objectively legally reasonable' for the defendants in this case to believe that it was permissible for them to knowingly . . . alter[] evidence during a criminal investigation." 804 F.3d at 550; *see also Harris v. City of New York*, 222 F. Supp. 3d 341, 352 (S.D.N.Y. 2016) ("[N]o reasonable police officer could have thought that telling the District Attorney's office that Plaintiff possessed the 'weapon' when the police had no such evidence was permissible police behavior.").

For the above reasons, summary judgment is denied on the Plaintiff's claim for the denial of his right to a fair trial.

### B. Because Defendants Had Probable Cause to Search and Arrest the Plaintiff, They Are Entitled to Summary Judgment on Plaintiff's Illegal Search, False Arrest, and Malicious Prosecution Claims

The Plaintiff has brought federal and/or state claims for illegal search, false arrest, and malicious prosecution. *See* TAC. The existence of probable cause to conduct a search or arrest an individual is a complete defense to each of these claims and, as a result, Defendants are entitled to summary judgment on all of these claims.

#### 1. Illegal Search

While "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton v. New York*, 445 U.S. 573, 586 (1980), "[a] search is presumptively reasonable when executed pursuant to a warrant," *Merriweather v. City of New York*, No. 12-cv-5258 (KPF), 2015 WL 57399, at *6 (S.D.N.Y. Jan. 5, 2015). Furthermore, "[t]here is 'a presumption of validity with respect to the affidavit supporting the search warrant.'" *Jenkins v. City of New York*, No. 10-cv-4535 (AJN), 2013 WL 870258, at *5 (S.D.N.Y. Mar. 6, 2013) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). In order to overcome this presumption, a plaintiff "must show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).

Here, a search warrant was issued by a judge based on a finding that there was probable cause. As a result, a presumption of reasonability attaches. Moreover, as this Court has previously determined, the judge was entitled to find probable cause based on the information of a CI who had proven reliable in the past. *See* Dec. 22, 2017 Order, Dkt. No. 59, at 4-5; *United States v. Fermin*, 32 F.3d 674, 677 (2d Cir. 1994) ("The past reliability of CI-1 and the corroborating evidence in the affidavit would have sufficiently assured Judge Leval of CI-1's

9

reliability in this case [despite facts omitted from affidavit]."); *see also Maye v. New York*, 517 F. App'x 56, 58 (2d Cir. 2013) ("[P]robable cause supported Maye's arrest because a reliable confidential informant had indicated to law enforcement that Maye was selling cocaine and heroin out of the informant's home.").

The Plaintiff's challenges to the affidavit in support of a search warrant focus on the validity of the six controlled buys that allegedly occurred between the CI and the Plaintiff. The Plaintiff does not challenge that the CI told officers that the Plaintiff was selling cocaine, that the CI had proven reliable in the past, or that the CI identified the Plaintiff in a photo array. As a result, even viewing all facts in the light most favorable to the Plaintiff and drawing all reasonable inferences in his favor, no reasonable juror could conclude that the search warrant issued on May 30, 2014 was invalid and Defendants are entitled to summary judgment on this claim.

### 2. False Arrest

To sustain a false arrest claim pursuant to § 1983, a plaintiff must prove that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The existence of probable cause is a complete defense to a false arrest claim. *Id.*

As explained above, the Defendants had probable cause to arrest the Plaintiff based on the CI's claim that he knew the Plaintiff was dealing cocaine out of his apartment. *Maye*, 517 F. App'x at 58; *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." (citation omitted)).

Because the CI's information alone created probable cause, no reasonable juror could conclude that the Defendants violated the Plaintiff's civil rights when they arrested him. In light of this, with respect to the false arrest claim (as opposed to the fair trial claim discussed above), the Court need not address the Plaintiff's contention that the individual Defendants fabricated evidence of cocaine in his apartment because, even assuming arguendo that one or more of the Defendant officers fabricated the cocaine evidence, they would have nonetheless had probable cause to arrest him based on the CI's information. *See Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (holding that it was not relevant whether police had withheld evidence on a malicious prosecution claim because the ADA interviewed two witnesses who provided an independent basis for probable cause); *Blau v. Suffolk County*, No. 11-cv-818 (JMA) (SIL), 2016 WL 426515, at *4 (E.D.N.Y. Feb. 3, 2016) (dismissing a false arrest claim based on an officer fabricating a confession by the plaintiff because another witness's statements were "independent evidence of probable cause . . . sufficient to defeat plaintiff's false arrest, malicious prosecution, and abuse of process claims").

As a result, the Defendants are entitled to summary judgment on the Plaintiff's false arrest claim.

### 3. Malicious Prosecution

The New York state-law tort of malicious prosecution has four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (citation omitted). A federal claim of malicious prosecution has the same elements but also requires a plaintiff to demonstrate a sufficient post-arraignment liberty restraint

to implicate the plaintiff's Fourth Amendment rights. *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Because an element of both offenses is the lack of probable cause, a showing that the defendant possessed probable cause to commence proceedings is a complete defense to a malicious prosecution claim.

Because the Defendants have demonstrated that probable cause existed to both search the Plaintiff's apartment and person and to arrest the Plaintiff, no reasonable juror could find in the Plaintiff's favor on his malicious prosecution claims. Therefore, the Defendants are entitled to summary judgment on these claims.

### D. Because the Plaintiff's Fair Trial Right Claim Survives, Summary Judgment Is Denied on Plaintiff's Failure to Intervene Claim

The Plaintiff has alleged a failure to intervene claim pursuant to § 1983 arguing that all of the individual defendants "failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having a realistic opportunity to do so." TAC ¶ 138. The only argument Defendants make in favor of summary judgment on this claim is that the Plaintiff "is unable to establish an underlying constitutional violation upon which to intervene." D. Support at 18. However, the Court has denied summary judgment on the Plaintiff's claim that his right to a fair trial was denied. Because the Plaintiff has a claim that survives summary judgment alleging a violation of his constitutional rights, and because the Defendants have made no other arguments in favor of summary judgment, summary judgment is denied on Plaintiff's failure to intervene claim with respect to the denial of a right to a fair trial.[2]

---

[2] In his opposition to the motion for summary judgment, the Plaintiff consents to summary judgment on the failure to intervene claim as to Defendant Popovic and his failure to intervene with respect to the search warrant application made on May 30, 2014. P. Opp., Dkt. No. 70, at 21. Because the Court has dismissed the illegal search claims as to all Defendants, the failure to intervene claim is likewise dismissed as to any action connected to procuring that search warrant. *See, e.g., Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) ("Because

### D. Because the Plaintiff Has Not Demonstrated that a Municipal Policy Caused His Injury, Defendants Are Entitled to Summary Judgment on Plaintiff's *Monell* Claim

The Plaintiff's seventh federal cause of action attempts to hold the City of New York liable pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for "fail[ing] to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty" within the police department. TAC ¶ 141. Because the Plaintiff cites to no evidence demonstrating that his injury was caused by a municipal policy, summary judgment is granted to Defendants.

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To sustain a *Monell* claim, a plaintiff "must prove that [1] 'action pursuant to official municipal policy' [2] caused the alleged constitutional injury." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).

Here, the Defendants argue – and the Court agrees – that the Plaintiff has not provided any evidence to suggest that his injury was caused by a municipal policy or custom. First, the Plaintiff has not adduced admissible evidence demonstrating a policy or custom. Plaintiff points to his Third Amended Complaint, in which he cites several annual reports of the Commission to Combat Police Corruption. P. Opp. at 22 (citing TAC ¶¶ 81-107). However, the Plaintiff has not provided a sworn affidavit from one of the report's authors attesting to the facts in the reports, nor has he even attached the reports as exhibits in the record on summary judgment. Instead, he argues that the reports can be found online and were disclosed to Defendants in his

---

the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim.").

supplemental disclosures. P. Opp. at 22. As a result, the reports are not evidence in this case and, regardless, are unsworn hearsay that would be inadmissible at trial.

Even if the Court could consider the reports for the truth of the matters asserted within them, the Plaintiff has not provided any evidence to demonstrate that the alleged custom of not disciplining officers who fabricate evidence was the cause of the Plaintiff's injuries in this case. For example, the Plaintiff has not demonstrated that any of the individual Defendants had been previously found falsifying evidence but had not been disciplined. Nor does the Plaintiff provide an expert opining that officers like the Defendants would not have fabricated evidence against the Plaintiff if not for the NYPD's failure to discipline other officers who fabricate evidence. Instead, the Plaintiff asserts in conclusory fashion that "the fabrications by the defendant officers could only take place in a culture in which dishonesty is insufficiently punished." P. Opp. at 22. However, this assertion is insufficient to create a triable issue on municipal liability.

Because the Plaintiff has not put forth admissible evidence demonstrating the existence of a municipal policy or that such a policy caused the Plaintiff's injury, the Defendant City of New York is entitled to summary judgment on the Plaintiff's *Monell* claim.

### E. Summary Judgment Is Granted on Plaintiff's Remaining State Law Claims Against the City

In the Third Amended Complaint, the Plaintiff brought claims for negligent hiring/training/retention and *respondeat superior* liability. TAC ¶¶ 159-68. The Plaintiff now consents to granting summary judgment on his negligent hiring/training/retention claim. P. Opp. at 23. As a result, summary judgment will be granted on that claim.

Defendants are also entitled to summary judgment on the Plaintiff's *respondeat superior* claim brought on the basis of malicious prosecution. "[T]here can be no imposition of vicarious liability in the absence of underlying liability." *Shapiro v. Kronfeld*, No. 00-cv-6286 (RWS),

2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004). Because the Court has granted summary judgment on the Plaintiff's claims for malicious prosecution, it now likewise grants summary judgment in the Defendants' favor on the vicarious liability claim.

For the above-stated reasons, Defendants' motion for summary judgment is granted on Plaintiff's sixth and seventh state-law claims.

## IV. Conclusion

Defendants' motion for summary judgment is denied with respect to Plaintiff's claims for denial of the right to a fair trial and failure to intervene. The motion for summary judgment is granted as to all other claims. Because the remaining claims are only brought against the individual Defendants, the City of New York is dismissed from the case. This resolves docket number 60.

Because the Court has resolved the motion for summary judgment on the parties' papers, the motion for oral argument is denied as moot. This resolves docket number 74.

A scheduling conference is hereby set for October 31, 2018 at 1 p.m. In advance of that conference, the parties shall confer and determine several mutually agreeable dates for trial and a proposed schedule for the filing of pre-trial materials. The parties shall also confer regarding settlement and indicate to the Court in advance of the October 31 conference whether they seek a referral to either the Magistrate Judge or the Court-annexed Mediation Program. The parties shall file a status letter regarding proposed trial dates and whether a settlement referral is requested by October 24, 2018.

SO ORDERED.

Dated: September 28, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge