UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Hozie Rowell,

           Plaintiff,

–v–

Police Officer Joan Ferreira *et al.*,

           Defendants.

16-cv-6598 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Hozie Rowell brings this motion for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. Mr. Rowell contends that the verdict was seriously erroneous or a manifest injustice because the sole juror of African-American appearance was struck. He also alleges that Defendants' counsel suborned perjury and made improper statements during her summation. Defendants oppose and move for sanctions. For the reasons given below, both parties' motions are DENIED.

## I.   BACKGROUND

The Court presumes the parties' familiarity with the facts of the case. Beginning on February 25, 2019, this Court held a four-day jury trial on Mr. Rowell's claim that Defendant Officer Shane Killilea had denied him the right to a fair trial by fabricating evidence and that Defendants Officers Joan Ferreira and Christopher Popovic had failed to supervise Defendant Killilea.

On February 28, 2019, the Jury entered a verdict in Defendants' favor on all three claims. Dkt. No. 120. Due to an administrative delay, judgment was only entered on June 4, 2019. Dkt. No. 130. On June 21, 2019, Mr. Rowell filed the instant motion for a new trial under Rule 59(a).

1

Dkt. No. 131. Attached to this motion was a declaration from Mr. Rowell's counsel, Mr. Joubin, describing the origin of certain NYPD lab reports he had attempted to introduce at trial as well as copies of those reports. Dkt. No. 132. In their opposition, Defendants sought sanctions against Mr. Joubin. Dkt. No. 137.

## II. LEGAL STANDARD

"[A] motion for a new trial pursuant to Fed. R. Civ. P. 59 may be granted by the district court, although there is evidence to support the jury's verdict, so long as the district court determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (internal quotation marks and brackets omitted). As a result, "on a motion for a new trial, the moving party bears a heavy burden." *Lopez v. Ramirez*, No. 11-cv-0474 (PGG), 2019 WL 3779277, at *9 (S.D.N.Y. Aug. 12, 2019) (quoting *Prendergast v. Pac. Ins. Co.*, No. 09-cv-6248 (MWP), 2013 WL 5567656, at *5 (W.D.N.Y. Sept. 25, 2013) (internal brackets omitted)); *see also Spinelli v. City of New York*, No. 02-cv-8967 (RWS), 2011 WL 2802937, at *1 (S.D.N.Y. July 12, 2011). Finally, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Zargary v. City of New York*, No. 00-cv-897, 2010 WL 329959, at *1 (S.D.N.Y. Jan. 26, 2010), *aff'd*, 412 F. App'x 339 (2d Cir. 2011) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## III. DISCUSSION

### A. Mr. Rowell's Motion for a New Trial Based on *Batson* is Denied

Mr. Rowell's first challenge to the integrity of his trial focuses on Defendants' peremptory strike of Juror No. 12, the sole juror who appeared to be black. During jury

selection, the Court held that Defendants provided a credible, race-neutral explanation of the strike and Plaintiff had not shown purposeful racial discrimination. The Court describes the circumstances surrounding the strike, provides the Court's *Batson* analysis during jury selection, and concludes that Mr. Rowell has not carried his burden of showing that the Court should reconsider this conclusion.

During jury selection, the panel of fourteen qualified jurors included only one individual, Juror No. 12, who appeared to be black. Dkt. No. 121, at 27:7-13. During voir dire, Juror No. 12 had provided minimal information about himself. *Id.* at 26:9-10. Before peremptories were exercised, one of Defendants' attorneys, Ms. Mitchell, represented to the Court that she had observed Juror No. 12 "during the course of [the Court's] reading summary of the case, shaking his head and reacting physically in some way." *Id.* at 26:9-15. The Court's description of the case included Plaintiff's allegation that Defendants had fabricated evidence. Besides Ms. Mitchell, no one else reported having witnessed these movements by Juror No. 12. *Id.* at 30:8-12. Based on this observation, Defendants requested that the Court ask follow-up questions of Juror No. 12 to ensure there was no basis for a cause strike. The Court granted this request over Plaintiff's objection. *Id.* at 26:16-25, 27:1-2. The Court informed Juror No. 12 "that an attorney witnessed him shaking his head during [the Court's] reading of the summary of the case and wanted to confirm if he had . . . anything that he's heard about the case that he thought would interfere with his ability to be fair and impartial." *Id.* 26:20-25. On the Court's perception, Juror No. 12 "answered readily 'no,' that he had no concerns." *Id.* at 26:24-25, 27:1-2. No additional requests were made regarding Juror #12 before the parties exercised peremptory strikes. *Id.*

Defendants then exercised one of their three peremptory strikes on Juror No. 12. Plaintiff then raised a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). In evaluating a *Batson*

3

challenge, a trial court employs a "three-part burden-shifting framework to assess whether the challenged peremptory strike is based on an impermissible discriminatory motive." *United States v. Martinez*, 621 F.3d 101, 108 (2d Cir. 2010) (citing *Batson*, 476 U.S. at 93-98). First, "the objecting party must make a prima facie case that opposing counsel exercised a peremptory challenge on the basis of a protected class." *Id.* (citing *Hernandez v. New York*, 500 U.S. 352, 358-59 (1991)). Second, "if a prima facie case is established, the burden shifts to the challenged party to present a nondiscriminatory reason for striking the jurors in question." *Id.* at 109 (citing *Batson*, 476 U.S. at 97). And third, "if a valid reason is articulated, the trial court considers the totality of the circumstances to determine whether the objecting party has carried its burden of proving purposeful discrimination by a preponderance of the evidence." *Id.* (citing *Hernandez*, 500 U.S. at 363-64). The Court applied that framework at trial.

First, the Court concluded that Mr. Rowell raised a prima facie case that Juror No. 12 was struck because of his race. "To establish a prima facie case of purposeful discrimination, the objecting party must show that the other party challenged members of a specific group and that the totality of the circumstances raises an inference of discriminatory motive." *Id.* (citing *Batson*, 476 U.S. at 96-97). The striking of the lone individual who appeared black on the panel lent some support to Mr. Rowell's argument. As the Supreme Court has held, when "peremptory strikes . . . exclude 91% of the eligible African–American venire members," then "[h]appenstance is unlikely to produce this disparity." *Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003); *see also Miller-El v. Dretke*, 545 U.S. 231, 240-41 (2005). Here, Defendants struck the sole juror who appeared to be black. They did so despite the fact that he had not given any answers that raised concerns about his impartiality. Dkt. No. 121, at 26:9-10. And while Ms. Mitchell represented that she had seen him make certain head movements during the Court's

4

reading of a summary of the case, upon follow-up questioning by the Court, Juror No. 12 answered "readily" that he had no concerns about his impartiality. *Id.* at 26:24-25, 27:1-2. While it is more difficult to draw statistical inferences from a sample size of one, Defendants' striking of the sole member of the panel who appeared black was sufficient to make a prima facie case that Juror No. 12 had been struck because of his race.

As to the second step, Defendants then provided three race-neutral justifications. At this step, "proffered explanations are deemed valid unless discriminatory intent is inherent in the challenged party's explanation." *Martinez*, 621 F.3d at 109. Indeed, the explanation need not be "persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices." *Id.* (internal quotation marks omitted). Defendants offered three justifications: (1) Juror No. 12's reaction to the Court's statement of the case and his answer that he did not have any particular feeling about the case despite that reaction; (2) his zero "yes" answers to the voir dire questions, which sought to elicit any basis for a cause strike; (3) and the fact that he had previously served on three different juries. Dkt. No. 121 at 28:17-19. All three reasons were race-neutral and not inherently discriminatory.

Finally, Mr. Rowell failed to meet his burden at the third step. The central issue was whether Ms. Mitchell's representations regarding Juror No. 12's head movements were credible. Peremptory challenges "may legitimately be based not only on answers given by the prospective juror to questions posed on voir dire, but also on the prosecutor's observations of the prospective juror." *McCrory v. Henderson*, 82 F.3d 1243, 1247-48 (2d Cir. 1996). The Court required that Ms. Mitchell provide "a representation to the Court" as "the only witness of the conduct that forms the basis of this strike." Dkt. No. 121 at 30:6-12. Ms. Mitchell then represented that she observed Juror No. 12 "lean back in the chair and tilt his head back and his eyes rolled back, and

his head, with his head down, and he shook his head back and forth, side to side." *Id.* at 30:13-21. The Court held that in light of "counsel's representation made to this Court, as an officer of the court, with obviously very serious repercussions if anything that she said to me was not true," Defendants had given a credible, race-neutral basis for the strike. *Id.* at 31:1-7, 21-25, 32:1. Taking all of the circumstances into account, including numerical disparity and the fact that Defendants had not struck another juror who had also sat on a jury before, the credible representation about Juror No. 12's behavior led the Court to deny the *Batson* challenge.

Mr. Rowell has not met his heavy burden of showing that the Court's decision on his *Batson* challenge warrants reconsideration. A Rule 59 motion "is not a vehicle for relitigating old issues." *Zargary*, 2010 WL 329959, at *1 (quoting *Sequa Corp.*, 156 F.3d at 144). In his motion, Mr. Rowell seeks to relitigate the Court's *Batson* ruling based on similar arguments to those he already made during jury selection. None of these arguments are sufficient to warrant reconsideration of the Court's contemporaneous conclusion, based on Ms. Mitchell's representation to the Court and the Court's observation of Ms. Mitchell's demeanor, that Juror No. 12 was not struck based on his race. Accordingly, Mr. Rowell's motion for a new trial based on Defendants' strike of Juror No. 12 is denied.

**B.     Mr. Rowell's Motion for a New Trial Based on Alleged Perjury is Denied**

Turning to his second challenge, Mr. Rowell argues that the verdict was tainted through perjury by one of the arresting officers, Mr. Killilea, and Defendants' counsel's suborning of that perjury. Mr. Rowell contends that evidence he did not introduce at trial shows that Mr. Killilea lied on the stand about having conducted field tests of substances that a confidential informant purchased from Mr. Rowell. For the reasons below, Mr. Rowell has failed to carry his heavy burden of showing that perjury occurred and so tainted the trial that he was entitled to a new one.

The Court first describes the substance of Mr. Killilea's relevant testimony and then addresses Mr. Rowell's challenge.

During the trial, Mr. Killilea testified that he had supervised a confidential informant who made six or seven controlled buys of drugs from Mr. Rowell. Dkt. No. 125, at 433:24-25, 434:1. Mr. Killilea further testified that for nearly all of those controlled buys, on that same day he conducted field tests of the substances purchased and found that they contained cocaine. Dkt. No. 123, at 423:15-25, 424:1-13; Dkt. No. 125, at 434:1-5; Dkt. No. 132, Ex. G. Mr. Killilea then testified that he filled out field test reports with the results of those tests. Dkt. No. 123, at 443:23-25, 444:1. Mr. Rowell sought to show the opposite: that Mr. Killilea had not filled out the field test reports contemporaneously with the controlled buys, but had done so afterwards and then back dated them. Defendants argued that back dating these reports would have been impossible since these reports were placed in a packet alongside the narcotics and sent off to the NYPD crime lab. Dkt. No. 127, 684:17-21. Mr. Killilea testified that while he did not specifically remember whether he had sent the field test reports in question to the NYPD lab, it was his practice to do so. Dkt. No. 125, at 545:18-25, 546:1-9.

During Mr. Killilea's cross-examination, Mr. Rowell sought to introduce documents that purportedly showed that Mr. Killilea had not, in fact, placed the field test reports in the envelope that was sent to the NYPD crime lab. The documents in question are lab reports from the NYPD crime lab stating that field reports were not present in the envelopes with the drugs from the controlled buys. Dkt. No. 125, at 547:20-25, 548:1-5. Mr. Rowell first attempted to present these documents to Mr. Killilea to refresh his recollection, then asked to be allowed to lay a foundation for these documents through Mr. Killilea, despite the fact that Plaintiff's counsel acknowledged that Mr. Killilea had never seen the documents before. *Id.* at 546:14-22, 547:1-

7

25, 548:1-25, 549:1-22. Plaintiff's counsel also conceded that he would have needed to have an employee from the NYPD crime lab come in to lay the foundation, but that he had not done so. *Id.* at 549:16-18. Defendants objected and the Court sustained the objection. *Id.* at 549:21-22.

Turning now to Mr. Rowell's arguments, he contends that the unadmitted NYPD lab reports show that Mr. Killilea perjured himself. Yet at base, Mr. Rowell is attempting to impeach Mr. Killilea with evidence that could have been introduced at trial but was not. The evidence was not introduced at trial because no witness was called who could properly authenticate it. A Rule 59(a) motion is not a vehicle for "taking a 'second bite at the apple.'" *Zargary*, 2010 WL 329959, at *1 (quoting *Sequa Corp.*, 156 F.3d at 144). And a court will not generally grant a new trial to remedy the consequences of decisions made by the moving parties' counsel at trial. *See Pace v. Nat'l R.R. Passenger Corp.*, 291 F. Supp. 2d 93, 102 (D. Conn. 2003) ("Defense counsel cannot make a strategic decision to present testimony on an issue, then *post-hoc* seek a new trial based on its own strategy."); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 674 F. Supp. 1074, 1075 (S.D.N.Y. 1987) (finding "significant merit" to the contention that a party may not seek "a new trial to submit evidence it could have introduced before," although ultimately granting motion for other reasons). The proper avenue for Mr. Rowell's argument was to introduce the NYPD lab reports during trial. Indeed, by his own admission, Mr. Rowell's counsel, Mr. Joubin, could have called an employee from the NYPD lab to lay the foundation for the lab reports. Dkt. No. 125, at 549:16-18. Instead, he sought to introduce the documents through a witness who had never seen them before. *Id.* at 546:14-25, 547:1-25, 548:1-25, 549:1-22. Having failed to introduce the NYPD lab reports at trial as evidence of the falsity of Mr. Killilea's testimony, Mr. Rowell now seeks a second opportunity to

introduce these documents to this Court for the same purpose. This is precisely the sort of "second bite at the apple" that cannot sustain a Rule 59(a) motion.

Furthermore, even if the Court were to consider Mr. Rowell's accusation of perjury on the merits, it is unavailing. "Without clear and convincing evidence of false testimony, accusations of perjury are insufficient to disturb the jury's verdict." *Uzoukwu v. Krawiecki*, No. 10-cv-4960 (RA), 2016 WL 6561300, at *8 (S.D.N.Y. Nov. 4, 2016) (citing cases); *see also Ricciuti v. New York City Transit Auth.*, 70 F. Supp. 2d 300, 314 (S.D.N.Y. 1999) ("[I]n the context of a civil action, perjury must be demonstrated by clear and convincing evidence.") (citing *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114 (2d Cir. 1970)). As an initial matter, while Mr. Joubin testified as to the creation of the NYPD crime lab reports, Dkt. No. 132 ¶¶ 6-8, Mr. Rowell has not provided sufficient evidence as to NYPD crime lab processes to show by clear and convincing evidence that absence of field tests in the envelopes prove the field tests were never sent to the lab. And even if the field test reports were not sent to the NYPD lab, this is not clear and convincing evidence of perjury by Mr. Killilea. Mr. Killilea testified that he did not specifically remember whether or not he had sent these particular field test reports to the NYPD lab, but that it was his practice to do so. Dkt. No. 125, at 545:18-25, 546:1-9. This testimony would not be perjury even if it turned out that he had not, in these specific cases, sent the reports to the lab.

As to Mr. Killilea's testimony that he did not back date the field test reports, this too would not necessarily be perjury if he had not sent the reports to the lab. Defendants argued that sending the field tests to the lab would have made it impossible for Mr. Killilea to back date them. *Id.* at 445:5-7, 11-15. But it does not follow that if Mr. Killilea had not sent the documents to the lab, then he must have backdated them. At most the new evidence would

simply take one piece of evidence in Mr. Killilea's favor off the table, but it would not prove that he was lying. Finally, while Mr. Rowell also points out that Mr. Killilea made the same mistake on three of the reports, which could tend to show they were filled out on the same day and back dated, *id.* at 436:15-20; 437:2-10; 441:10-17; 443:16-22, even when combined with evidence that Mr. Killilea did not send these reports to the NYPD this does not rise to the level of clear and convincing evidence that Mr. Killilea backdated the reports and perjured himself about it.

Since Mr. Rowell's argument that Defendants' counsel suborned perjury is based on the same accusation, it fails as well. Accordingly, Mr. Rowell has failed to meet his heavy burden of showing that Mr. Killilea perjured himself and that this so tainted the trial that Mr. Rowell is entitled to a new one.

### C. Mr. Rowell's Motion for a New Trial Based on Ms. Speight's Summation is Denied

Mr. Rowell's third argument, that Defendants' counsel's comments during summation denied him a fair trial, fails as well.

On February 28, 2019, counsel for the parties delivered their closing arguments. One of Defendants' counsel, Ms. Speight, delivered a summation in which she repeatedly compared Mr. Rowell's lawsuit to his past practice of selling fake drugs. Dkt. No. 127, at 679:8-14, 685:21-23, 691:9-13. For example, Ms. Speight described Mr. Rowell's past sales of fake drugs thusly:

> Plaintiff's routine is to take something fake, sprinkle just enough of the real thing— 'crumbs,' he said—to trick the customer, then make money. That is how he operates. For him, he called it selling dummies. For the customer, he said they were buying garbage, and every time, he was getting paid.

*Id.* at 679:8-12. Ms. Speight then compared this to Mr. Rowell's claims in the case: "That's this trial for plaintiff. He's selling you garbage. He's hoping it pays." *Id.* at 679:12-14. Mr. Rowell did not raise an objection at the time to Ms. Speight's summation.

The standard for granting a new trial based on improper remarks during a summation is demanding. "[A] party seeking a new trial on the basis of opposing counsel's improper statements to the jury faces a heavy burden, as rarely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005) (internal quotation marks and brackets omitted). "In particular, where the jury's verdict finds substantial support in the evidence, counsel's improper statements will frequently be *de minimis* in the context of the entire trial." *Id.* Here, Ms. Speight's references to Mr. Rowell's past sales of fake drugs were amply supported by the evidence adduced at trial. Dkt. No. 127, at 679:8-12. And Ms. Speight's various comments to the effect that he was "selling [the jury] garbage" and "hoping it pays" were not so prejudicial as to require a new trial. *Id.* 679:12-14. Comments by an attorney on summation that a party is "a disgrace," a "schmuck," a "scam artist, and a "con man" who is "fundamental[ly] dishonest" are insufficient to warrant a new trial. *See Air China, Ltd. v. Kopf*, 473 F. App'x 45, 51 (2d Cir. 2012). The same is true of "repeated[] suggest[ions]" that the "case was fraudulent and brought for financial motive." *Marcic*, 397 F.3d at 125. Finally, as here, a "claim to have been prejudiced by the summation is considerably undermined by [a party's] failure to object to the statements in question at trial." *Malmsteen v. Berdon, LLP*, 595 F. Supp. 2d 299, 310 (S.D.N.Y. 2009); *Guzman v. Jay*, 303 F.R.D. 186, 195 (S.D.N.Y. 2014) ("even if the remarks were improper, the Court finds that it had no more than a *de minimis* effect on the trial, and that Defendant's arguments to the contrary are seriously undercut, if not waived, by," *inter alia*, "counsel's failures to lodge a contemporaneous objection"). Accordingly, Mr. Rowell has failed to carry his heavy burden of showing that Ms. Speight's un-objected-to remarks were so inflammatory that a new trial is necessary.

### D. Defendants' Motion for Sanctions is Denied

In their opposition to Plaintiff's motion, Defendants move for sanctions against Plaintiff's counsel for his "baseless but serious attack on Lieutenant Killilea and defense counsel, in relation to both his *Batson* challenge and his summation remarks." Dkt. No. 137 at 18-19. Defendants request sanctions under Rule 11, yet have failed to follow even the basic requirement that "a motion for sanctions must be made separately from any other motion." Fed. R. Civ. Pro. 11(c). Furthermore, "[t]he standard for Rule 11 sanctions is quite rigorous and very rarely succeeds in cases where evidence of bad faith or aggravated misconduct is not apparent." *Indoafric Exports Private Ltd. Co. v. Citibank, N.A.*, No. 15-CV-9386 (VM), 2016 WL 6820726, at *4 (S.D.N.Y. Nov. 7, 2016), *aff'd*, 696 F. App'x 551 (2d Cir. 2017). That standard is not met here. Finding no merit to Defendants' procedurally improper sanctions request, it is denied.

## IV. Conclusion

For the reasons given above, Mr. Rowell's motion for a new trial is hereby DENIED. Defendants' request for sanctions is hereby DENIED. This resolves docket item number 131.

SO ORDERED.

Dated: September 18, 2019
New York, New York

ALISON J. NATHAN
United States District Judge